**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-03196-CMA

JEFF ROBINSON,

Plaintiff,

v.

UNIVERSITY OF DENVER,

Defendant.

---

# FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

The Final Pretrial Conference is scheduled for November 10, 2020 at 10:30 a.m., via telephone conference before Magistrate Judge Scott T. Varholak.

Plaintiff, Jeff Robinson ("Mr. Robinson"), is represented by:

Christopher M.A. Lujan, Esq.
Empower P.C.
2851 South Parker Road, Suite 316
Aurora, Colorado 80014
720.791.5700 (Office)
720.260.1802 (Mobile)
303.317.8145 (Facsimile)
christopher@empowerlawdenver.com

Defendant, University of Denver, (“DU”), is represented by:

Jim Goh
Rayner Mangum
Constangy, Brooks, Smith & Prophete, LLP
600 17th Street, Suite 2700S
Denver, CO 80202
Telephone: 720.343.7560
Facsimile: 720.343.7559
jgoh@constangy.com
rmangum@constangy.com

## 2. JURISDICTION

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to 42 U.S.C. §12111 et. seq. (“Americans with Disabilities Act”), 29 U.S.C. §794 et. seq. (“Rehabilitation Act”), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 et. seq., and the Family Medical Leave Act, 29 U.S.C. §2601 et. seq. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## 3. CLAIMS AND DEFENSES

### A. Plaintiff:

The Plaintiff began his service with the University of Denver in 2001 where he was hired as a Database Administrator. In approximately 2012, Mr. Robinson’s position was changed to a Senior Database Administrator where he was required to work on the Defendant’s computer systems. Although the Defendant’s work schedule was Monday through Friday totaling 37.5 hours a week, there were many times when the Plaintiff would have to work well after 5:00 p.m. or on weekends. From 2001 through 2016, Plaintiff

performed his duties without complaint and received high marks on his annual performance evaluations. During this period of time, the Plaintiff utilized very little sick or vacation time and could be regularly counted on to perform his duties.

The Plaintiff was first diagnosed with sleep apnea in 2007. Despite the Plaintiff's ability to successfully manage the physical effects of his sleep apnea with assistance from his physician, Mr. Robinson became extremely ill in October 2016 where he suffered from severe and debilitating fatigue, severe headaches, high blood pressure, and anxiety.

Despite his illness, Plaintiff continued to perform the essential functions of his job. In March 2017, the Plaintiff first asked his immediate supervisor, Rohini Ananthakrisnan, if she would reassign after-hours assignments to Mr. Robinson's co-workers as he recovered from his illness where she promptly denied his request. When the Plaintiff's request was denied, he requested leave on March 2, 2017 under the Family Medical Leave Act to tend to his ailing health. While on leave, Plaintiff's health began to improve.

The Plaintiff returned to work on March 27, 2017 where his only medical restriction was that he could not work more than 37.5 hours a week nor could he perform after-hours or weekend work because such work would aggravate his sleep apnea disability. On this day, the Plaintiff notified Defendant that he scheduled a surgery for August 8, 2017 that, according to Plaintiff's physicians, would completely alleviate his sleep apnea and related symptoms. The August 8th date was the earliest that Plaintiff could schedule this surgery.

At numerous times in June 2017, Plaintiff met with Ms. Ananthakrisnan and other DU officials in an effort to manage his disability while performing the essential functions of his job. On June 6, 2017, the Defendant notified the Plaintiff that he could not perform

the essential functions of his job because he could not work more than 37.5 hours a week. The Defendant made this determination despite the fact that they had the personnel to temporarily handle the workload while the Plaintiff recovered from his disability. The Defendant made this determination even though they had information that Plaintiff's August surgery was likely to completely alleviate his sleep apnea and related symptoms.

On June 22, 2017, the Plaintiff was interviewed by Defendant's EEOC investigator regarding a discrimination complaint filed by another employee against Ms. Ananthakrisnan. During this interview, Plaintiff advised this investigator that he did not want to participate in this investigator for fear that he would be retaliated against by Defendant. Despite this fear, the Plaintiff participated in this investigation by giving an interview to this investigator.

On July 19, 2017—weeks after cooperating with DU's investigation into allegations of discrimination by Ms. Ananthakrishnan—the Defendant made the decision to terminate the Plaintiff. The Defendant violated the Plaintiff's rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 when it discriminated against Mr. Robinson because of his sleep apnea disability. The Plaintiff asked for a temporary modification to his work schedule where he would not have to provide 24/7 on-call support until after he recovered from his surgery. While the Defendant asserts that Plaintiff's inability to provide 24/7 on-call support poses an undue hardship to its' operations, their reason(s) are pretext for illegal disability discrimination in violation of the ADA and Rehabilitation Act.

The Plaintiff had successful surgery which, according to his medical records, substantially alleviated the symptoms from his sleep apnea. After having surgery, Plaintiff was able to provide 24/7 on-call technological support. Today, Plaintiff works for an employer who, at times, requires after hours support for its' office computers and he can do so without the need for a reasonable accommodation.

The Defendant retaliated against Plaintiff in violation of the ADA. On numerous occasions from October 2016 through June 2017, the Plaintiff notified several members of Defendant's management team that his sleep apnea was a disability which required DU to provide him with a reasonable accommodation. In Plaintiff's case, his reasonable accommodation was a temporary modification to his work schedule until his recovery from his August 2, 2017 surgery. The Defendant's decision to terminate the Plaintiff occurred within months of Mr. Robinson's participation in a protected activity and is in violation of the retaliation provision within the ADA.

Similarly, the Defendant violated the retaliation prohibition within Title VII of the Civil Rights Act of 1964 when it terminated Plaintiff no less than three weeks after he participated in an EEO discrimination investigation into a complaint against Ms. Ananthakrisnan. The Plaintiff was hesitant in participating in this investigation because he believed it would negatively impact his job. Despite the assurance from Defendant's investigator that he would not face retaliation because of his participation in this investigation, Plaintiff was fired within three weeks of his interview.

The Defendant illegally interfered with the Plaintiff's ability to take Family Medical Leave in violation of the FMLA. The Plaintiff made several attempts to take intermittent

leave for his serious medical condition that was covered under the FMLA. The Defendant, through Ms. Ananthakrisnan's actions, dissuaded Plaintiff from taking intermittent FMLA. Had the Defendant allowed for Plaintiff to take this intermittent leave, his leave associated with his August 2017 surgery would have been protected by federal law.

The Defendant's claim of undue hardship is contradicted by the actions of Ms. Ananthakrishnan and qualifies as pretext. First, she manipulated work scheduled so that a female Senior Database Administrator would not have to work nights or weekends. Next, she criticized Plaintiff for minor work performance issues due to his work schedule but did nothing to a Senior Database Administrator who was responsible for crashing a system due to her errors. Further, Ms. Ananthakrishnan and Ms. Lutz created a policy that called for "redundancy" so that every Senior Database Administrator could perform each other's functions and tasks in the event that one of them gets "hit by a bus." Finally, it took the Defendant a significant amount of time to fill the vacancy created when it terminated the Plaintiff which ultimately resulted in DU hiring a Junior Database Administrator with less experience than the Plaintiff. Had it simply allowed for the Plaintiff to go on temporary medical leave to recovery from surgery and ultimately keep his job, he would have only been gone for one month recovering from his surgeries but instead it created a situation where it had to wait months to fill this critical role. All these acts contradicted the Defendant's arguments why Plaintiff's absences created an undue hardship.

Equally troubling is the fact that the Defendant came to such a quick and hasty conclusion that Plaintiff's absence caused an undue hardship. No one within the

Defendant's team of decision makers ever questioned Ms. Ananthakrishnan's conclusion that "99% of the upgrades in production will need to happen during off-hours" despite the fact that there is plenty of contradictory evidence to show that this estimate is a gross exaggeration. Finally, the Defendant utilized contractors and assistance from outside manufacturers when it saw fit to. Ironically, Ms. Ananthakrishnan started her career with the Defendant as a contract employer. Had the Defendant utilized these options for the brief amount of time that Plaintiff was unavailable to provide 24/7 support in recovering from his disability, Mr. Robinson would not have been terminated for his disability in July 2017.

The record in this case is riddled with the very actions that fit squarely within the definition of pretext.

The Plaintiff seeks economic damages in the form of backpay, restoration of benefits, front pay, compensatory damages, and attorney's fees for an amount to be determined at trial. Further, Plaintiff seeks $300,000.00 for the compensatory damages allowable under 42 U.S.C. §1981 (a). The Plaintiff seeks any pre- and post-judgment interest that he is entitled to under the law.

**B. Defendant:**

DU hired Plaintiff Jeff Robinson as a Database Administrator in 2001. In 2012, DU conducted a reorganization, pursuant to which Plaintiff's position was changed to Senior Database Administrator, and he was moved to the Enterprise Application Services ("EAS") Group. The essential functions of the Senior Database Administrator position included creating, maintaining, configuring, and installing DU's servers, and providing

24/7 support for critical situations on an on-call basis. The EAS Department conducted the vast majority of the upgrades that needed to be performed on DU's systems after hours in order to keep DU's systems operational during the day when users needed to access them.

In March of 2017, DU approved a request that Plaintiff made for FMLA leave. The following month, Plaintiff made another request for FMLA leave, which DU also approved. The fitness for duty medical certification that Plaintiff submitted in support of returning from this period of leave stated that Plaintiff was restricted to working only 8-hour days, 5 days a week, beginning April 19, 2017 and continuing either indefinitely or for twelve months. This restriction meant that Plaintiff was unable to perform the requirement of providing 24/7 support for critical situations on an on-call basis. Despite the hardship posed by Plaintiff's inability to perform after-hours work, the EAS Department voluntarily attempted to accommodate his restriction while DU evaluated his accommodation request and engaged in the interactive process. Where possible during this time, the other Senior Database Administrators in the department took over Plaintiff's after-hours and weekend work in addition to performing their existing work responsibilities.

After attempting to accommodate Plaintiff's restricted work schedule for several months while the interactive process was ongoing, DU determined that Plaintiff was not able to perform the essential functions of his position and that this posed an undue hardship to the EAS Department. DU then reviewed available positions at the University and concluded that Plaintiff was not qualified for any of them. Thus, DU's ADA Coordinator met with Plaintiff on June 12, 2017 to explain that, unless Plaintiff submitted

additional documentation from his physician, DU had concluded the interactive process. Because Plaintiff was unable to perform the essential functions of his job and there were no other positions at DU for which Plaintiff was qualified that were vacant or expected to become vacant in the reasonably near future, DU's ADA Coordinator told Plaintiff that DU planned to initiate an exit strategy for Plaintiff.

On June 13, 2017, Plaintiff contacted DU's Human Resources Department, stating that he had a surgery scheduled later that summer which he believed would eliminate his need for indefinite restrictions to his work schedule. For this reason, DU placed its termination decision temporarily on hold to allow Plaintiff to provide new documentation from his physician with respect to the upcoming surgery and its anticipated impact on his need for accommodations. Plaintiff's physician subsequently submitted paperwork to DU on June 20, 2017. The documentation provided that Plaintiff planned to have a turbinectomy surgery performed roughly two months later, on August 10, 2017, and that this surgery "may substantially improve [Plaintiff's] condition." Because the documentation did not provide any information regarding whether or when Plaintiff would reasonably be able to perform the essential functions of his job after having surgery in August, DU again searched for positions at the University that were vacant or expected to become vacant in the reasonably near future and determined that Plaintiff was not qualified for any such position. For this reason, DU decided on June 27, 2017 to implement its previous decision from June 12, 2017 and terminate Plaintiff's employment. Plaintiff was ultimately terminated on July 12, 2017, after returning to work from vacation.

As detailed above, DU thoroughly fulfilled its obligations under the ADA and the Rehabilitation Act by engaging in good faith in the interactive process and attempting to find another position for Plaintiff after determining that he could not perform the essential functions of his job and was thus not qualified for his position.

Plaintiff's retaliation claims relating to his termination fare no better. Plaintiff claims that his termination was retaliatory because he gave an interview on June 22, 2017 in connection with DU's investigation into an internal grievance that a different employee had filed. It is undisputed, however, that DU had decided to terminate Plaintiff's employment on June 12, 2017, which was ten days before Plaintiff gave the interview at issue. Thus, DU's termination decision pre-dated Plaintiff's protected activity. Any claim that Plaintiff's termination was in retaliation for his request for accommodation would also fail, as under well-established caselaw, DU lawfully terminated Plaintiff's employment after determining that he was not qualified for his position because he could not perform the essential functions of his job.

In addition, DU raises the following affirmative defenses:

1. Plaintiff has failed to state a claim or claims upon which relief can be granted.
2. Plaintiff has failed to mitigate his damages, if any.
3. DU's actions were taken in good faith based upon legitimate business reasons unrelated to any protected activity that Plaintiff purportedly engaged in.
4. Plaintiff's claim for punitive damages is barred because DU made good faith efforts to comply with the law, including promulgating anti-discrimination/anti-

retaliation policies and providing training, and had reasonable grounds for believing that its actions were not in violation of the law.

## 5. STIPULATIONS

The following facts are undisputed:

1. Plaintiff is a resident of the State of Colorado.
2. DU hired Plaintiff in 2001 as a Database Administrator.
3. Plaintiff's position was changed to Senior Database Administrator in 2012.
4. The essential functions of the Senior Database Administrator position included being responsible for database and application server installations and upgrades and providing 24/7 support for critical situations on an on-call basis.
5. Throughout 2016 and 2017, Plaintiff's supervisor was Ms. Rohini Ananthakrishnan.
6. Plaintiff requested and was approved to take two periods of FMLA leave in March and April of 2017.
7. Plaintiff's physician submitted medical paperwork to DU on April 12, 2017, which stated that Plaintiff could work only 8 hour days, 5 days a week from April 19, 2017 to indefinitely or for 12 months.
8. On June 12, 2017, DU's ADA Coordinator met with Plaintiff and explained that, unless Plaintiff submitted new documentation from his physician, DU had concluded the interactive process. Because Plaintiff was unable to perform the essential functions of his job and there were no other positions at DU for which

Plaintiff was qualified that were vacant or expected to become vacant in the reasonably near future, DU intended to initiate an exit strategy for Plaintiff.

9. DU terminated Plaintiff's employment on July 12, 2017.

10. On June 22, 2017, the Plaintiff gave a written statement to DU in support of an internal grievance filed by former DU employee Jeff Crew against Ms. Ananthakrishnan.

## 6. PENDING MOTIONS

On September 28, 2020, DU filed a Motion for Summary Judgment on all of Plaintiff's claims. Plaintiff filed a Response on October 20, 2020. DU's current deadline to file their Reply is November 10, 2020.

There are no other pending motions.

## 7. WITNESSES

a. Non-expert Witnesses

    1. See Plaintiff's Witness List attached hereto as Ex. A.

    2. See Defendant's Witness List attached hereto as Ex. B.

b. Expert Witnesses

    1. Plaintiff's Expert Witnesses: None

    2. Defendant's Expert Witnesses: None

## 8. EXHIBITS

a. Exhibits

    1. See Plaintiff's Exhibit List attached hereto as Ex. C.

    2. See Defendant's Exhibit List attached hereto as Ex. D.

Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial. The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 9. DISCOVERY

Discovery has been completed.

Unless otherwise ordered, upon a showing of good cause in an appropriate motion, there will be no discovery after entry of the final pretrial order.

## 10. SPECIAL ISSUES

None.

## 11. SETTLEMENT

a. Counsel for the parties and any *pro se* party have not met to discuss settlement of the case.

b. The participants in any future settlement conference will include counsel, party representatives, and any *pro se* party.

c. The parties have been promptly informed of all offers of settlement.

d. Counsel for the parties and any *pro se* party may hold future settlement conferences.

e. It appears from the discussion by all counsel and any *pro se* party that there is some possibility of settlement.

f. Counsel for the parties and any *pro se* party considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 12. OFFER OF JUDGMENT

Counsel and any pro se party acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 13. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 14. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION AND PROCEEDINGS

1. The trial will be before a jury.
2. Anticipated length of trial: 5 days.
3. All proceedings will be most efficiently conducted at the U.S. District of Colorado's facilities in Denver, Colorado.
4. No other orders pertinent to the trial proceedings.

Dated this 10th of November, 2020.

BY THE COURT:

Scott T. Varholak
United States Magistrate Judge

APPROVED:

*s/ Christopher M.A. Lujan*
Christopher M.A. Lujan, Esq.
Empower P.C.
2851 South Parker Road, Suite 316
Aurora, Colorado 80014
720.791.5700 (Office)
720.260.1802 (Mobile)
303.317.8145 (Facsimile)
christopher@empowerlawdenver.com

*Attorney for Plaintiff*

*s/ Rayner Mangum*
Jim Goh
Rayner Mangum
Constangy, Brooks, Smith &
Prophete, LLP
600 17th Street, Suite 2700S
Denver, CO 80202
Telephone: 720.343.7560
jgoh@constangy.com
rmangum@constangy.com

*Attorneys for Defendant*