IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-03196-CMA-STV

JEFF ROBINSON,

    Plaintiff,

v.

UNIVERSITY OF DENVER,

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. # 25). The Motion is granted in part and denied in part. With respect to Claims 1, 2, 3, and 4, the Court grants summary judgment in favor of the University of Denver. With respect to Claims 5 and 6, the Court finds that there are genuine issues of material fact that preclude summary judgment. The Motion is therefore denied with respect to Claims 5 and 6.

### I.  BACKGROUND

This is a disability discrimination case. Plaintiff, Jeff Robinson, was a Senior Database Administrator at the University of Denver ("DU"). (Doc. # 1, ¶¶11-12). His job entailed installing, configuring, and maintaining DU's computer servers, as well as providing 24/7 on-call technical support. (Doc. # 1, ¶ 13).

In 2007, Robinson was diagnosed with sleep apnea, a sleep disorder in which breathing repeatedly stops and starts. (Doc. # 1, ¶ 22). For about a decade, Robinson was able to manage his condition, and it did not interfere with his job. (Doc. # 1, ¶ 22). By early 2017, however, his condition had apparently worsened. He began taking medical leave and requesting work restrictions. (Doc. # 25, ¶¶ 15-21). One of the work restrictions Robinson requested was that he be excused from providing 24/7 on-call support. (Doc. # 25, ¶ 20; Doc # 25-1, pp. 81-83). Robinson's physician stated that this restriction would be "indefinite" or for "12 months." (Doc. # 25-1, p. 84).

Robinson's supervisor, Rohini Ananthakrishnan, was not involved in approving his leave requests; those requests were handled by DU's Leave Administrator and ADA Coordinator. (Doc. # 25, ¶ 16). However, when Ananthakrishnan learned of Robinson's work restrictions, she informed the administration that the restrictions made it impossible for Robinson to perform an essential function of his job – namely, providing 24/7 on-call support. (Doc. # 25, ¶¶ 23, 30-31). According to Ananthakrishnan, this put a significant strain on the IT department, which needed Senior Database Administrators to perform critical upgrades after-hours. (Doc. # 25, ¶ 23).

In light of Robinson's inability to perform the on-call function of his job, DU determined that it could not continue employing him as a Senior Database Administrator. It attempted to find him another job within the university, but Robinson was not qualified for any of the jobs that were available or likely to come available in the near future. (Doc. # 25-1, p. 73). Robinson was eventually terminated.

Robinson is now suing DU for disability discrimination. He claims that DU violated federal law by failing to provide reasonable accommodations for his sleep apnea. (Doc. # 26, p. 2). He also claims that DU interfered with his attempts to take medical leave; that he was fired in retaliation for requesting disability accommodations; and that he was fired in retaliation for participating in an internal investigation into his supervisor. (Doc. # 26, p. 2).

DU seeks summary judgment on all of Robinson's claims. DU argues that it was justified in terminating him because he could not perform an essential function of his job, with or without reasonable accommodations. DU also denies any interference or retaliation.

## II.     LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*.

### III.   ANALYSIS

Robinson asserts six causes of action against DU: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) retaliation in violation of the ADA; (3) disability discrimination in violation of the Rehabilitation Act ("RA"); (4) retaliation in violation of the Rehabilitation Act; (5) retaliation in violation of Title VII of

the Civil Rights Act ("Title VII"); and (6) interference with his right to take leave under the Family Medical Leave Act ("FMLA"). (Doc. # 1). DU now seeks summary judgment on all six claims.

DU argues that Robinson's discrimination claims (Claims 1 and 3) must fail as a matter of law because, at the time he was fired, Robinson was not "qualified" to perform the Senior Database Administrator job, even with reasonable accommodations. DU also denies any retaliation in violation of the ADA or the RA, and it argues that Robinson will be unable to prove those claims (Claims 2 and 4). DU further contends that Robinson's Title VII claim (Claim 5) is contradicted by the record, and that his FMLA interference claim (Claim 6) is devoid of evidentiary support and must fail as a matter of law.

**A.     CLAIMS 1 AND 3 - DISCRIMINATION**

To state a prima facie case for discrimination under the ADA,[1] a plaintiff must demonstrate that (1) he is disabled; (2) he was qualified, with or without reasonable accommodation, to perform the essential function of his job; and (3) his employer discriminated against him because of his disability. *Taylor v. Pepsi–Cola*, 196 F.3d 1106, 1109 (10th Cir.1999). DU's Motion focuses on the second element: qualification. DU argues that, at the time he was fired, Robinson was not "qualified" for the job of Senior Database Administrator because he could not perform an essential function of that job, even with reasonable accommodations. (Doc. # 25, p. 13).

---

[1] The same analysis applies to discrimination claims under the ADA and the Rehabilitation Act. *See Borwick v. Univ. of Denver, Bd. of Trustees,* No. 11-CV-01216-MSK-KMT, 2013 WL 1149543, at *9 (D. Colo. Mar. 18, 2013). Therefore, the Court will treat Plaintiff's ADA and RA discrimination claims (Claims 1 and 3) as a single claim for purposes of this Motion.

To determine whether an individual is "qualified," courts ask (1) whether the plaintiff's disability prevented him from performing the essential functions of his job; and (2) if so, whether the plaintiff might have nevertheless been able to perform those functions if the employer had provided a reasonable accommodation. *Roberts v. Board of County Com'rs of Brown County, Kans.*, 691 F. 3d 1211, 1216 (10th Cir. 2012). The parties agree that Robinson's sleep apnea constituted a disability, and that this disability prevented Robinson from performing an essential function of his job – namely, the on-call function. Therefore, the question for the Court to resolve is whether Robinson might have been able to perform those functions if the employer had provided a reasonable accommodation.

Robinson argues that he could have performed the on-call function if DU had given him a temporary leave of absence to undergo surgery. (Doc. # 26, p. 5). Robinson's doctors had apparently recommended a procedure called a turbinoplasty, which Robinson believed would alleviate his symptoms and allow him to return to full-time work without restrictions. (Doc. # 26, pp. 5-11). In some cases, a temporary leave of absence for medical treatment can be a "reasonable accommodation." The problem is, Robinson never requested a leave of absence. Robinson merely states that he *planned* to seek a leave of absence. (Doc. # 26, p. 6; Doc. # 26-1, p. 30). This was not sufficient. "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) (internal quotations omitted) *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148

L.Ed.2d 866 (2001). At the time DU made the decision to fire him, Robinson had not provided DU with any information to suggest that he could resume full-time work following a temporary leave of absence. Therefore, he cannot establish that he was "qualified" for the position, and his discrimination claim must fail as a matter of law.

Robinson argues, however, that he "told his supervisors in June 2017" that he planned to undergo surgery in August. (Doc. # 26, p. 7). Thus, he argues, DU was on notice of his need for a leave of absence. This argument is unavailing. The record shows that when Robinson emailed his supervisor on June 5, 2017 to tell her about his surgical plans, he merely stated that "one of my doctors" recommended "some surgery," which "may change my health situation." (Doc. # 26-1, p. 104). He did not provide the date of the surgery, the name of the procedure, or the recovery time. (Doc. # 26-1, p. 104). Even Robinson's doctor admitted that, based on the information Robinson provided, "DU could not have known when or even if Mr. Robinson would be able to return to his full duties at work." (Doc. # 25-1, p. 58).

Robinson also argues that it was DU's burden to research his condition to determine whether surgery might enable him to return to work. (Doc. # 26, p. 7). Robinson cites no authority to support this position. Rather, it is Robinson's burden to demonstrate that a reasonable accommodation would have enabled him to perform his job. *Roberts*, 691 F. 3d at 1218.

Robinson also argues that, if DU had granted his leave request, he could have returned to work without restrictions in September 2017. (Doc. # 26, p. 8). But this argument is based on hindsight – Robinson claimed after the fact that it took him only

7

about a month to recover from surgery. (Doc. # 26-1, p. 29). It is undisputed, however, that Robinson never provided this return-to-work timeline to DU before he was fired, and he never established that he would likely be able to work without restrictions after the surgery. Thus, there is no genuine dispute that at the time Robinson was fired, he was not "qualified" for the Senior Database Administrator job because he could not perform the job, even with a reasonable accommodation.

**B.     CLAIMS 2 AND 4 - RETALIATION**

Robinson next argues that he was terminated in retaliation for his "attempts to notify his supervisor about his disability" (Doc. # 1, ¶ 91) and for his "numerous requests for a reasonable accommodation."[2] (Doc. # 1, ¶ 110). This claim is hard to distinguish from Robinson's discrimination claim. Both claims allege that Robinson was disabled; that he sought accommodations from his employer; and that he was fired for reasons connected to his disability. The only difference appears to be that while the discrimination claim alleges that DU fired Robinson because he *had* a disability, the retaliation claim alleges that DU fired Robinson because he *told* DU that he had a disability. This is a distinction without a difference. As discussed above, DU properly concluded Robinson was not qualified for the job. Whether that conclusion was based on Robinson's disability, or instead on Robinson telling DU about his disability, is of no

---

[2] Plaintiff frames this retaliation claim as two separate causes of action: on brought under the ADA and one brought under the Rehabilitation Act." The same legal standards apply to both types of retaliation claims. *Dickman v. LaHood*, 600 F. App'x 611, 613 (10th Cir. 2015). Therefore, the Court will treat these two claims as one for purposes of this Motion.

significance. Therefore, the retaliation claims fail for the same reason the discrimination claims fail.

**C.    CLAIM 5 - TITLE VII**

Robinson next argues that he was terminated in retaliation for participating in an internal investigation into the firing of a former employee. Robinson gave an interview in that investigation on June 22, 2017. DU argues that it "made the decision to terminate Robinson's employment on June 12, 2017 – ten days before Robinson gave his interview." (Doc. # 34, p. 9). Robinson argues that he was not actually terminated until July 12. (Doc. # 26, p. 15). There appears to be a genuine factual dispute as to when Robinson was actually terminated. Due to this dispute, the Court cannot conclude that DU is entitled to judgment as a matter of law on Robinson's Title VII claim. Therefore, the motion for summary judgment is denied with respect to that claim.

**D.    CLAIM 6 - FMLA INTERFERENCE**

Robinson's sixth claim is that DU interfered with his ability to exercise his rights under the FMLA. Specifically, he contends that his supervisor "sought to discourage Plaintiff from applying for additional family medical leave that he was entitled to" by "ma[king] it clear to the Plaintiff that she did not like it when he took time off for his disability." (Doc. # 26, pp. 12-13).

The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise any right provided under the FMLA." 29 U.S.C. § 2615(a)(1). To establish an entitlement or interference claim, a plaintiff must show that (1) he was entitled to take FMLA leave; (2) that the employer acted adversely

9

to interfere with that right; and (3) the employer's action related to the plaintiff's attempt to exercise his rights. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir.2012). Although the FMLA does not define "interference," Department of Labor regulations provide that "interference" includes situations where the employer discourages an employee from applying for leave: "'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b) *Martin v. Canon Bus. Sols., Inc.*, No. 11-CV-02565-WJM-KMT, 2013 WL 4838913, at *4 (D. Colo. Sept. 10, 2013).

      The Tenth Circuit has not explained what constitutes "discouraging an employee from using" FMLA leave. The case law cited by the parties would seem to suggest that "discouragement" requires something more serious than merely expressing a "dislike for leave." (Doc. # 26, p. 13 ("Ms. Ananthakrishnan's dislike for leave was obvious to the Plaintiff")). Other judges in this district have suggested that "discouragement" means "provid[ing] a strong disincentive for taking FMLA leave," or "attaching negative consequences to the invocation of FMLA leave," like threatening to revoke an employee's accrued sick leave if she took FMLA leave. *Martin*, 2013 WL 4838913, at *4; *see also Mardis v. Cent. Nat'l Bank & Trust of Enid*, 1999 WL 218903, *2 (10th Cir. April 15, 1999). However, DU has not cited any authority to suggest that Plaintiff's discouragement allegations are per se insufficient to constitute "discouragement" in violation of the FMLA. Therefore, the Court cannot say that DU is entitled to judgment

as a matter of law on that claim, and summary judgment is therefore denied with respect to that claim.

## IV.    CONCLUSION

For the foregoing reasons, DU's Motion for Summary Judgment (Doc. # 25) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED with respect to Plaintiff's Claims 1, 2, 3, and 4 (discrimination and retaliation under the ADA and the Rehabilitation Act). The Motion is DENIED with respect to Claims 5 and 6.

DATED: February 19, 2021

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge